UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

DR. JAMES WITTIG,

                                  Plaintiff,

-against-

MOUNT SINAI MEDICAL CENTER, INC.,

                                  Defendant.

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

14 Civ. 5808 (AKH)

-------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiff Dr. James Wittig is a former Director of Orthopedic Oncology and Associate Professor of Orthopedic Surgery at the Icahn School of Medicine at Mount Sinai. Dr. Wittig entered a written employment agreement with Defendant Mount Sinai on September 7, 2007, and worked there from November, 2007 until he voluntarily resigned his employment in November, 2013. Compl. ¶¶ 30, 37, 54. Dr. Wittig brought suit against Mount Sinai on July 29, 2014, alleging that Defendant failed to pay him for medical procedures he performed while employed by Mount Sinai but for which payment had not yet been collected by the time of his departure. He asserted claims for breach of contract, quasi-contract recovery, breach of the covenant of good faith and fair dealing, fraudulent misrepresentation, and equitable accounting.

        On September 22, 2014, Defendant filed this motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the following reasons, and the reasons stated on the record, Defendants' motion is granted in part and denied in part.

## LEGAL STANDARD

        "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a 12(c) motion, a court

"applies the same legal standard as that applicable to motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

Section V of the employment agreement executed between Plaintiff and Defendant discusses Plaintiff's compensation. It provided for (1) a base salary of $160,000; (2) a Clinical Supplement of $490,000 per year for the first three years, and $100,000 per year for years four and five, and (3) a Clinical Productivity Bonus for the first three years, which was to be calculated as a percentage of revenue from personally-performed physician services. Mufson Decl. Ex. A. In addition, Section III of the contract reads, in relevant part:

> If your employment with Mount Sinai terminates for any reason, all practice accounts receivable and receipts shall be the property of Mount Sinai School of Medicine, and no portion will be distributed to you after your termination date.

*Id.* Section V also states that the Clinical Supplement is subject to the departmental FPA guidelines. *Id.* at 3. Part 9 of those guidelines state that:

> FPA participants shall not be entitled to any receipts or other revenue accruing in their practice accounts or in any personal or departmental accounts following termination and/or resignation.

Mufson Decl. Ex. D.

On October 16, 2009, an addendum modified the contract to abolish the Clinical Productivity Bonus and instead calculate Plaintiff's Clinical Supplement on a revenue-minus-expense basis, as the Clinical Productivity Bonus had previously done. Mufson Decl. Ex. B.

Plaintiff now seeks his Clinical Supplement for procedures he performed, but for which payment was not received by the time Plaintiff resigned. Although against the terms of his agreement, Plaintiff alleges that, prior to commencing his employment, Dr. Evan Flatow of Mount Sinai's Department of Orthopedics orally promised Plaintiff that Plaintiff would indeed be entitled to a share of such receipts. Compl. ¶ 24.

2

## DISCUSSION

Plaintiff seeks to introduce evidence of a separate, oral agreement between Plaintiff and Dr. Flatow. However, the parol evidence rule ordinarily bars the introduction of extrinsic evidence to vary or contradict the terms of a writing. *Schron v. Troutman* Sanders, 20 N.Y. 3d 430, 436 (2013) (internal quotations omitted). And under New York law, oral promises to pay compensation cannot support a breach of contract claim where, as here, contrary writings addressing the plaintiff's compensation exist. *E.g. Baron v. Port Auth. of NY & NJ*, 271 F.3d 81, 85 (2d Cir. 2001). In this case, the alleged "oral promise" from Dr. Flatow flatly contradicts the subsequent written employment agreement that Plaintiff signed. Accordingly, Plaintiff's claim for breach of contract fails as a matter of law, and is dismissed.

Plaintiff also seeks recovery under quasi-contract, alleging theories of implied contract, promissory estoppel, and unjust enrichment. But Plaintiff's claims for quasi-contract recovery suffer the same fate. New York law "does not recognize promissory estoppel in the employment context." *Deutsch v. Kroll Assocs., Inc.*, No. 02-cv-2892 (JSR), 2003 WL 22203740 (S.D.N.Y. 2003); *Shapira v. Charles Schwab & Co.*, 225 F. Supp. 2d 414, 419 (S.D.N.Y. 2002). And "unjust enrichment [and] *quantum meruit* . . . are non-contractual, equitable remedies that are inapplicable if there is an enforceable contract governing the subject matter." *R.B. Ventures, Ltc. V. Shane*, 112 F.3d 54, 60 (2d Cir. 1997). Quasi-contract cannot co-exist with an express agreement, *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y. 2d 382, 388 (1987), and an express agreement governing the issue in this case clearly exists. Plaintiff's quasi-contract claims are therefore dismissed.

Plaintiff's fraudulent misrepresentation claim alleges that Dr. Flatow knew that the oral promise was false, but made the promise anyway in order to induce Plaintiff's employment. However, the Second Circuit has held that, where "a fraud claim arises out of the same facts as Plaintiff's breach of contract claim, with the addition only of an allegation that

3

defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001). That description fits Plaintiff's allegation of fraudulent misrepresentation perfectly, and the fraud claim is therefore dismissed.

Plaintiff's claim under the implied covenant of good faith and fair dealing is not as easily dispensed, however. In New York, the covenant prevents either party to a contract from doing anything to destroy the other party's right to receive the fruits of the contract. *See Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87 (1933). "Integral to a finding of a breach of the implied covenant is a party's action that directly violates an obligation that may be presumed to have been intended by the parties." *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990). In this case, Plaintiff has alleged that Defendant failed to judiciously seek payment for the medical services that Plaintiff rendered. Plaintiff had a legitimate expectation that Defendant would exercise reasonable diligence in collecting those receipts, and if Plaintiff's allegations are true, then Defendant's conduct may have unjustly deprived Plaintiff of duly earned revenue. This will not be an easy showing. *See Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Pub. Co.*, 30 N.Y.2d 34, 45 (1972) (explaining that a publisher's actions which incidentally lessen an author's royalties does not breach the covenant unless the "activity is so manifestly harmful to the author . . . as to justify the court in saying there was a breach of the covenant to promote the author's work."). However, limited discovery will be necessary to determine the merits of this claim. Accordingly, judgment is denied with respect to the implied covenant of good faith and fair dealing.

Plaintiff's equitable accounting claim, although not an independent claim in a breach of contract lawsuit, may be pleaded as an ancillary remedy to allow Plaintiff to elicit the

facts relevant to the alleged slow billing. Plaintiff may allege this claim as part of an implied covenant claim.

## CONCLUSION

Defendants' motion for summary judgment is granted with respect to Plaintiff's breach of contract, quasi-contract, fraudulent misrepresentation, and equitable accounting claims. The motion is denied with respect to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. Plaintiff is granted leave to amend his complaint, consistent with this opinion, until January 30, 2015. Defendant's amended answer is due by February 20, 2015. The parties shall appear for a status conference on February 6, 2015 at 10:00 AM.

The Clerk shall mark the motion (Doc. No. 7) terminated.

SO ORDERED.

Dated: December 18, 2014
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge